FILED

2013 Dec-06  AM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BERNARD MILLER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:12-cv-2869-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.      Introduction

The plaintiff, Bernard Miller, Jr., appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Mr. Miller timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Miller was fifty years old at the time of the Administrative Law Judge's ("ALJ's") decision, he has a tenth grade education, and has no past relevant work.

(Tr. at 38, 58–59, 91, 162, 180.) Mr. Miller claims that he became disabled on March 1, 2007, due to depression, poor memory, a bi-polar disorder, and problems with his neck, arm, and back. (Tr. at 166.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Miller meets the nondisability requirements for a period of disability and DIB, and was insured through September 20, 2008. (Tr. at 28.) He further determined that Mr. Miller has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's "status post hernia repair, status post

upper back contusion, scoliotic deformity at C3–4, chronic obstructive pulmonary disease, status post left forearm fracture, status post blunt abdominal trauma, antisocial personality, and polysubstance abuse" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) Further, he found that all of Mr. Miller's impairments, including the substance use disorder, meet section 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)). (Tr. at 28, 30.) However, the ALJ found that if Plaintiff stopped his substance abuse, Plaintiff would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 31–32.) Thus, the ALJ proceeded to the next step of the evaluation and determined that if Mr. Miller stopped the substance abuse, he would have the residual functional capacity ("RFC") to perform:

> light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he has no greater than moderate restriction in the following areas: understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; dealing with changes in a routine work setting; and responding to customary work pressures. He should have no exposure to marked changes in temperature and humidity; and no exposure to dust, fumes, and gases.

(Tr. at 32.)

According to the ALJ, Plaintiff has no past relevant work under 20 C.F.R. §§ 404.1565 and 416.965, even though he engaged in work activity during the relevant period, because his earnings did not exceed the threshold for substantial gainful activity. (Tr. at 35.) The ALJ further noted that Plaintiff is a "younger individual," and has a "limited education," as those terms are defined by the regulations. (*Id.*) The ALJ determined that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work []." (*Id.*) The ALJ then determined that "[i]f the claimant stopped the substance use, considering claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform," such as a deli worker, cafeteria attendant, and textile related positions. (Tr. at 35–36.) Accordingly, the ALJ found that because Plaintiff would not be disabled if he stopped the substance use, his substance use is a contributing factor material to the determination of disability, and thus, the plaintiff has "not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." (Tr. at 36.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to

apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Mr. Miller alleges that the ALJ's decision should be reversed and remanded for two reasons. First, the plaintiff alleges that the ALJ's physical RFC assessment is not supported by substantial evidence for various reasons.  (Doc. 10 at Page 7.) Second, the plaintiff asserts that the ALJ's mental RFC assessment is not supported by substantial evidence. (Doc. 10 at Page 11.)

### A.   Physical RFC Assessment

In support of his contention that the ALJ's RFC assessment is not supported by substantial evidence, Plaintiff argues that: 1) the ALJ failed to comply with the requirements of Social Security Ruling ("SSR") 96-8p, which requires a function-by-function analysis; 2) the ALJ's RFC assessment was contrary to the opinions of Dr. Zaremba, the one-time consultative examiner, and Dr. Heilpern, the non-examining medical consultant; and 3) the ALJ failed to order any additional medical opinions. (Doc. 10 at 7, 9–10.)

#### 1.   Function-by-Function Analysis

Plaintiff first asserts that the ALJ did not provide a function-by-function

assessment compliant with SSR 96-8p to determine his ability to handle exertional or strength demands. (Doc. 10 at Page 7). Specifically, Plaintiff alleges that the ALJ failed to make specific findings regarding his push/pulling, postural, and/or manipulative abilities. (*Id.*)

A claimant's RFC reflects the most he can do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The determination of an RFC is an administrative assessment based on all the evidence of how a claimant's impairments and related symptoms affect his ability to perform work-related activities. *See* SSR 96-8p, 1996 WL 374184, at *1–2 (S.S.A.). The final responsibility for assessing a claimant's RFC rests with the ALJ, based on the relevant medical and other evidence. *See* C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c). Relevant medical and other evidence includes medical assessments, medical reports from treating and examining sources, and description and observations of a claimant's limitations by the claimant and others. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *5.

SSR 96-8p states that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . Only after that may RFC be expressed in

terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *5. In addition, the strength demands: "[s]itting, standing, walking, lifting carrying, pushing, and pulling" must be considered separately, even if the final RFC assessment combines those activities. (*Id.* at 5.) The ruling, however, does not require a detailed analysis in the ALJ's written decision of a claimant's ability to perform each function. *See* SSR 96-8p, 1996 WL 374184, at *5, 7.

Plaintiff alleges that the ALJ failed to adequately explain his findings on a function-by-function basis. However, even assuming *arguendo* that the ALJ could have been more specific, his findings are supported by substantial evidence. The Eleventh Circuit has held that, even when the ALJ could have been "more specific and explicit" in his findings with respect to a plaintiff's "functional limitations and work-related abilities on a function-by-function basis," they nonetheless meet the requirements under SSR 96-8p if the ALJ considered all of the evidence. *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007). *See also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (an ALJ's RFC finding is sufficiently detailed despite lacking an express discussion of every function if there is substantial evidence supporting the ALJ's RFC assessment). In addition, the ALJ is not required

to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to allow the court to conclude that the ALJ considered the plaintiff's medical condition as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).

Here, as in *Freeman*, it is evident that the ALJ considered all of the evidence in the record in assessing Plaintiff's physical RFC. The ALJ noted that he made his determinations "[a]fter careful consideration of the entire record," including all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p. (Tr. at 32.) The ALJ also noted that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p," and that he carefully reviewed Plaintiff's subjective complaints in accordance with the guidelines provided by 20 C.F.R. §§ 404.1529 and 416.929, and in SSR 96-7p. (Tr. at 33.)

The ALJ stated that he limited Plaintiff to light work based on the objective medical evidence, including the opinion of Dr. Robert H. Heilpern, a non-examining state agency medical consultant. In reference to Plaintiff, Dr. Heilpern opined that

"straining could produce a scrotal extrusion to the claimant's previously repaired hernia, and that the claimant would be limited to the light exertional level." (Tr. at 34, 307–10, 540.) Dr. Heilpern's opinion that Plaintiff be limited to light work impliedly limits Plaintiff's ability to push/pull within an exertional range consistent with light work.  In addition, the ALJ considered a physical examination of Plaintiff conducted one month before the hearing.  *See* SSR 96-8p, 1996 WL 374184, at \*3.  The ALJ noted that on June 13, 2010, Plaintiff was examined at the Trinity Regional Center by Dr. Solar Doldar.  (Tr. at 50, 848.)  Dr. Doldar found that Plaintiff had normal range of motion in his extremities and no swelling or deformities.  (Tr. at 50, 848.)  Plaintiff also had "5/5" or full strength in his upper and lower extremities.  (Tr. at 845.)  Plaintiff's back was reported as "negative" for "CVAT" and his spine was non-tender.  (Tr. at 34, 848.)  Though Plaintiff was diagnosed with chronic obstructive pulmonary disease ("COPD"), the condition was classified as mild. (Tr. at 845, 848.)  Further, a consultative physical examination by Dr. Jack Zaremba on March 17, 2009, revealed Plaintiff's hips, knees, and ankles were normal.  (Tr. at 474.)  Finally, Plaintiff also testified that he provides food and water to his pets.  (Tr. at 73, 190.)  The act of providing food and water logically requires manipulative functioning to open the food, pour the water, and place the food and water for consumption.  *See*

SSR 96-9p, 1996 WL 374185, at *8 (S.S.A.) (noting manipulative functioning means use of both hands and fingers); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (noting the ALJ may consider a claimant's daily activities when determining the issue of RFC).

Taking the aforementioned medical evidence into account, the ALJ, in posing his hypothetical question to the VE, stated Plaintiff was capable exertionally of:

> lifting 20 pounds occasionally, 10 pounds frequently, would be able to sit for two hours at a time, six hours during an eight hour day, walk two hours at a time, six hours during an eight hour day, would be capable of constant fingering and handling bilaterally [. . . but could have] no exposure to marked changes in temperature and humidity and exposure to dust, fumes, and gases.

(Tr. at 91–92.) The ALJ's description of Plaintiff's exertional RFC is consistent with light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining "light work" as: "[l]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").

Accordingly, it is clear from the evidence above that Plaintiff did not have postural limitations beyond those required of light work. The ALJ complied with SSR

96-8p, especially considering the fact that the ruling does not require a detailed analysis in the ALJ's written decision of a claimant's ability to perform each function. *See* SSR 96-8p, 1996 WL 374184, at *5, 7. Furthermore, even assuming *arguendo* that the ALJ could have been more explicit in his findings, there is sufficient evidence to support the ALJ's findings that the plaintiff can do light work as defined by 20 C.F.R. §§ 404.1567(b) because it is clear that the ALJ considered all the evidence in the record. Therefore, the ALJ sufficiently complied with the requirements of SSR 96-8p, notwithstanding that the ALJ may have been more "specific and explicit" in his findings with respect to Plaintiff's RFC. *See Freeman*, 220 F. App'x at 959.

2.      Weight Given to Opinions of Consultative Examiner and
         Non-Examining Medical Consultant

Next, Plaintiff argues that the ALJ's RFC assessment is contrary to the opinions of Drs. Zaremba and Heilpern. Within the classification of acceptable medical sources are the following different types of sources which are entitled to different weights of opinion: 1) a treating source, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, which is defined as "a physician, psychologist, or other acceptable medical source who has

examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, "the weight due to a non-examining physician's opinion "depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011).

Dr. Zaremba conducted a consultative examination of Plaintiff on March 17, 2009, at Baptist Health Center. (Doc. 10 at Page 9–10.) Dr. Zaremba found Plaintiff had restricted range of motion in his cervical and dorsolumbar spines. (Tr. at 473, 476.) He diagnosed Plaintiff with "cervical degenerative disc disease," "lower lumbar mechanical pain radiating into the hips interfering with prolonged standing, bending and lifting," and "status post open reduction and internal fixation of a forearm fracture in his dominant are with some persistent pain." (Tr. at 476-77)

(emphasis added).

Substantial evidence supports the ALJ's decision to afford only minimal weight to the opinion of Dr. Zaremba, a non-treating source. As the fact-finder, the ALJ was entitled to weigh the evidence and ultimately reject portions of Dr. Zaremba's report as inconsistent with other evidence of record. *See* 20 C.F.R. § 416.929(c)(4); *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (holding that an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion") (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).  Further, the opinion of Dr. Zaremba was not entitled to any deference because, as a one-time examiner, he was not a treating physician.  *See* 20 C.F.R. § 404.1527(d)(I); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d at 1160.

Substantial evidence supports the weight the ALJ afforded to Dr. Zaremba's medical opinion for the following reasons. The ALJ specifically discussed which physicians' medical opinions he afforded more weight and the basis for each decision. (Tr. at 35.) The ALJ specifically noted that he afforded more weight to the opinions of Dr. Cooper and Dr. Heilpurn because their opinions were "reasonable given the combined effects of the claimant's impairments as demonstrated by the objective evidence." (*Id.*)  In support, the ALJ cited to exhibits 7F, 8F, 9F, 10F, 11F, and 12F

in the record. (*Id.*) In contrast, the ALJ afforded minimal weight to Dr. Zaremba's medical opinion because it appeared that Dr. Zaremba relied solely upon the plaintiff's reports and subjective complaints.[1] (*Id.*) Moreover, the ALJ found that Dr. Zaremba's findings were inconsistent with the objective medical evidence and the plaintiff's prior and subsequent physical examinations. (*Id.*)  In addition, the ALJ noted that Plaintiff attempted to mislead Dr. Zaremba. At the consultative physical examination conducted by Dr. Zaremba, Plaintiff told him that he had no history of alcohol or drug use, even though the record clearly indicated otherwise. (Tr. at 34, 469, 475.) In fact, at an appointment with Dr. Summerlin on March 4, 2009, Plaintiff reportedly smelled of alcohol and admitted to drinking six beers the night before the appointment, but only after initially telling Dr. Summerlin that he had not drank in several days. (Tr. at 469.) At the same appointment Plaintiff admitted to significant use of numerous illegal drugs and abuse of prescription drugs. (*Id.*) Yet, two weeks later, Dr. Zaremba wrote "Alcohol - Negative" in Plaintiff's social history.  (Tr. at 475.)  Moreover, Plaintiff told Dr. Summerlin that he smoked between one and two packs of cigarettes a day, but told Dr. Zaremba that he only smoked half a pack of cigarettes a day. (Tr. at 469, 475.)

---

[1] The ALJ found Plaintiff to be not fully credible due to multiple misrepresentations he made to examining physicians, and his reported failure to put forth a good effort during an examination by Dr. Robert Summerlin—a psychological consultative examiner—who also opined that "there may have been an element of malingering to [Plaintiff's] overall presentation." (Tr. at 33–34.) Plaintiff does not challenge the ALJ's findings regarding his credibility.

Thus, the ALJ determined that Plaintiff was less than forthcoming in his reports to Dr. Zaremba, causing the ALJ to question to validity of Dr. Zaremba's findings.

In light of the fact that Dr. Zaremba relied on Plaintiff's reports and subjective claims in rendering his medical opinion, there is substantial evidence to support the ALJ's decision to only afford minimal weight to Dr. Zaremba's March 2009 assessment of Plaintiff's condition. *See McCloud*, 166 F. App'x at 418–419; *Crawford*, 363 F.3d at 1160. *See also* 20 C.F.R. § 404.1527(d)(I).

As noted, Dr. Heilpern opined in part that Plaintiff could do light work but that he was limited to pushing and pulling occasionally with his left arm and frequently with his right and had postural and manipulative limitations. (Tr. at 536-38.)  Dr. Heilpern's assessment was based in part on Dr. Zaremba's examination.  (Tr. at 536.) The ALJ gave significant, but not controlling, weight to Dr. Heilpern's opinions of Plaintiff's exertional abilities "given the combined effects of Plaintiff's impairments as demonstrated by the objective evidence."  (Tr. at 51.)  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  As discussed in part III.A.2., *supra*, substantial medical evidence in the record supported the ALJ's exertional RFC determination, which was based in part on Dr. Heilpern's opinion.  Plaintiff has not demonstrated that the ALJ erred by assigning substantial, but not controlling, weight to Dr. Heilpern's opinion.

*See Jarrett*, 422 F. App'x at 873 ("the weight due to a non-examining physician's opinion "depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence").

> 3.   Failure to Obtain Additional Medical Opinions

The plaintiff also summarily states that the ALJ should have obtained testimony from a medical expert or ordered an additional consultative examination with a medical source opinion before determining Plaintiff's RFC. (Doc. 10 at Page 8.) However, by Plaintiff's own admission, there is no express requirement for a medical source opinion or RFC assessment to be of record in order for the ALJ to make RFC findings. (Doc. 10 at Page 7.) *See also Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (holding that an ALJ is not required to obtain additional medical opinion when the record contains sufficient evidence for the ALJ to make a disability determination).

Additionally, the only legal authority Plaintiff cited in support of his assertion is 20 C.F.R. § 404.1529(b), which states that the ALJ *may* ask for and consider the opinion of a medical expert. By its plain language, the regulation does not require an ALJ to seek an additional medical opinion when the record is sufficiently developed for the ALJ to determine a plaintiff's RFC.  Here, there is sufficient objective medical

evidence in the record to support the ALJ's RFC findings.  The ALJ specifically noted in his decision the specific medical findings of eight different physicians: Dr. Salar Doldar, Dr. Joel Mixon, Dr. Robert Summerlin, Dr. Amy Cooper, Dr. Bibb Allen, Dr. Ronald Lepke, Dr. Robert Heilpern, and Dr. J. L. Zaremba. (Tr. at 28–31, 34–35.) Plaintiff has not shown that an additional medical consultation would have demonstrated any limitations beyond those that the ALJ included in his RFC, and in light of the fact that the ALJ discussed the medical opinions of eight examining and non-examining physicians in his decision, it seems highly unlikely that obtaining an additional medical opinion or consultation would have unearthed any new limitations. Thus, the ALJ's RFC assessment was based on substantial evidence notwithstanding the fact that the ALJ did not request or order any medical opinions or consultations regarding the plaintiff's limitations in addition to those already contained in the record.

B.    Mental RFC Findings

Plaintiff contends that the ALJ's finding at steps 2 and 3 of the sequential evaluation—that he would not have a severe mental impairment if he stopped abusing substances—is inconsistent with the ALJ's ultimate RFC finding, which included moderate mental limitations. (Doc. 10 at Page 11.)

In considering an individual with a mental impairment the ALJ is required to use the "special technique" dictated by the Psychiatric Review Technique Form (PRTF) for evaluating mental impairments. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § [416.920a-(a)]). This technique requires separate evaluations on a four-point scale of how the individual's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." (*Id.*) These four broad functional areas are known as the "paragraph B" criteria. *See* SSR 96-8p, 1996 WL 374184, at *4. In his decision, the ALJ completed a PRFT and incorporated the results of the technique into the findings and conclusions of his decision. (Tr. at 30–31.)

After analyzing each of the four functional areas in turn, the ALJ found that if Plaintiff stopped his substance abuse he would have no more than mild limitations in the first three functional areas. (*Id.*) As to the fourth functional area, the ALJ found that Plaintiff would experience no episodes of decompensation if he stopped abusing substances. (Tr. at 31.) Thus, the ALJ assigned a rating of "mild" to the first three functional areas and found "no" limitation in the fourth area. (*Id.*) As the ALJ correctly stated, such determinations generally result in a finding that the mental

impairment is non-severe. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Nevertheless, an ALJ must consider a plaintiff's severe and non-severe impairments in assessing his RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

The ALJ correctly explained that the limitations identified in the "paragraph B" criteria are not an RFC assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. (Tr. at 31.) *See* SSR 96-8p, 1996 WL 374184, at *4. The ALJ noted, "the mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments." (*Id.*) *See* SSR 96-8p, 1996 WL 374184, at *4.  The ALJ then went on to state that the RFC assessment he decided upon reflected the degree of limitation he found in the paragraph B mental function analysis. (*Id.*)  In assessing Plaintiff's mental RFC, the ALJ found that he would have:

> no greater than moderate restriction in the following areas: understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; dealing with changes in a routine work setting; and responding to customary work pressures.

(Tr. at 32.) Thus, to the extent the ALJ translated his "paragraph B" findings into an

RFC with moderate limitations, it was actually to Plaintiff's benefit. *See* SSR 96–8p, 1996 WL 374184, at *4, 6.

Plaintiff also argues that the ALJ's use of "moderate" in his RFC finding is not a "vocationally relevant" term to quantify his mental limitations. (Doc. 10 at Page 12.) However, the VE, in response to the ALJ's hypothetical question, stated there were other jobs Plaintiff could perform even with "moderate" mental limitations. (Tr. at 92–93.) In addition, Social Security Ruling 85-16, 1985 WL 56855, which addresses the assessment of RFC for mental impairments, notes that individuals with a mental impairment may "experience moderate to moderately severe difficulties in relating to coworkers or supervisors, or in tolerating normal work pressures. The conclusion of reduced RFC in this area can be applied to all steps of vocational assessment." *See* SSR 85-16, 1985 WL 56855, at *3. Thus, the term "moderate" may be used in Plaintiff's vocational assessment.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Miller's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.[2] A separate order will be entered.

---

[2] The Court notes that Plaintiff makes several conclusory statements in her brief that could perhaps be construed as additional arguments in her favor. These brief statements are not enough,

Done this <u>6th</u> day of <u>December 2013</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174256

---

however, to properly place these issues before this Court and should be deemed waived. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").